## Keith Company v. Hummel.

(Decided June 20, 1913.)

### Appeal from McCracken Circuit Court.

Attachment—Discharge—Evidence.—On a motion to discharge an attachment, evidence examined and held to show that the defendant so concealed himself that summons could not be served upon him, and that the court erred in discharging the attachment.

EATON & BOYD for appellant.

MILLER & MILLER for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

In the month of March, 1912, plaintiff, George E. Keith Company, a corporation organized under the laws of the State of Massachusetts, sold and delivered to defendant, L. Hummel, certain goods and merchandise at the price of $438.13. The account not being paid, it was sent to the law firm of Eaton & Boyd for collection. On October 16, 1912, they brought suit against the defendant, and on the 18th day of October took out a general order of attachment, based on an affidavit alleging that the defendant had left the county of his residence, to-wit: McCracken county, to avoid service of summons; and (2) that he so concealed himself that summons could not be served on him. Another ground was relied on, but was defectively stated in the affidavit.

On January 6, 1913, defendant filed an answer and affidavit controverting the grounds of the attachment. On January 8th, he entered a motion to discharge the attachment, and filed notice of the motion which had been served on plaintiff's attorneys on the previous day. The hearing of the motion was continued until January 10th. Plaintiff filed a motion for a continuance. The motion was overruled, and the court, after hearing evidence, gave judgment in favor of plaintiff for the amount of its claim, with interest, but entered an order discharging the attachment. Plaintiff appeals.

The evidence bearing on the grounds of attachment is, in substance, as follows: Defendant testified that Mr. Boyd had been pushing him very hard about the claim. At that time his mother was very sick, and he had to go to Chicago. He left for Chicago on the 8th or 9th of October. He stayed there three or four days.

When he left Chicago his intention was to go to Guthrie to get the money. He went to Guthrie to see if his father-in-law would not let him have the money. His father-in-law was a wealthy man. From Guthrie he went to Louisville to see his brother-in-law, who was also wealthy, to get him to pay half the debt. While he was in Louisville he was doing nothing. While there he got a telegram that his store had been closed up. Did not know anything about when court began, and did not know he was going to be sued. On cross examination he stated that he promised to pay Mr. Boyd between the 10th and 25th one-half, and ten days later the balance. He did not tell Mr. Boyd that he was going away. He told the clerks to tell Mr. Boyd that he would be back between the 10th and 25th. On the 16th of October he was in Louisville. On the 17th and 18th he was in Louisville. When he got the telegram that his store had been closed up he left Louisville on the four o'clock train Saturday morning. Mr. B. M. Philley, who had several large claims against defendant, testified that he asked defendant if he had any relatives from whom he could borrow. Defendant said possibly his father-in-law or brother-in-law might loan him the money. Philley suggested that his wife go to see them. Defendant said she could not go as the baby was not well. Philley then suggested that defendant go. A day or two later Philley called and defendant was gone. Defendant's stock was worth between $7,000 and $8,000. On cross examination witness stated that at the time he had this conversation it was between the 1st and 10th of the month of October. He had four claims against defendant, one for $1,100, one for $700 and two small ones.

Ex Mason, a clerk in defendant's store, testified that defendant told him a few days before he left that he had to raise some money, and he spoke several times of going to see his father-in-law. On the 8th or 9th defendant told witness that he was going away and did not knew when he would return. His purpose was to raise the money. On cross-examination witness stated that he did not know where defendant was, but only knew where defendant told him he was going.

For plaintiff Mr. A. E. Boyd, an attorney at law, who had the claim for collection, testified that he re-received the claim the latter part of September. He had several conversations with defendant about it in

his office and at defendant's store. Defendant promised to pay half of the claim on the 10th day of October, and said he would pay the balance on the 20th. Witness told him that the people he represented were anxious for the claim to be paid or for suit to be filed; that if defendant would pay the claim before the October term of the court it would be satisfactory. Defendant said he would pay half on the 10th and try to arrange for the balance before court. This conversation took place the latter part of September or the first part of October. On October 10th he went to see defendant. Defendant was gone and no one could tell him where he was or when he would be back. He afterwards went to defendants store on several occasions and was informed by his brother-in-law that he did not know when defendant would return. On the 18th his brother-in-law said that plaintiff had gone away to raise the money, and would be back in a day or two if he could raise it; but if he could not raise it he did not know when he would be back. Thereupon, witness had the attachment issued. The deputy sheriff in whose hands the summons against defendant was placed for service was called, and it was then admitted by the parties that the deputy sheriff looked for the defendant on the 16th and 18th, but could not find him.

In rebuttal Hummel testified that Mr. Boyd did not mention to him anything about when court began, and witness did not know when court did begin. He had only been living in Paducah since March 1. He denied that Mr. Boyd told him that unless he paid the account he would be sued. He told Mr. Boyd that he would pay the money by the 10th or 25th.

Mr. Boyd further testified that defendant said that he would pay on the 10th, and that he then told the defendant that he would have to pay the other half before court convened.

We deem it unnecesary to pass on the question of continuance, in view of the conclusion of the court in regard to the order discharging the attachment.

The question is: Did defendant leave McCracken county to avoid the service of summons, or did he so conceal himself that summons could not be served upon him? Counsel for defendant contend that the evidence fails to establish either of these facts. On the contrary, it is insisted that the weight of the evidence is to the effect that defendant was absent from the county in a

*bona fide* attempt to secure money for the purpose of paying the debt. In this connection we are referred not only to the statements of defendant, but the evidence of Mr. Philly, who says that he advised defendant to see his father-in-law and brother-in-law. Defendant's conduct, however, must be judged in the light of all the attendant circumstances. According to plaintiff's evidence, he agreed to pay half the money on the 10th, and the balance before court convened. According to defendant's evidence, he was to pay half of the claim between the 10th and 25th of October, and the balance within ten days. The next term of the McCracken Circuit Court was approaching. The last suing day for that term was October 18th. Defendant was heavily in debt. He was being pressed not only by plaintiff but by other creditors. On the day before he was to make a payment on the debt in question he left the county. He says that he went to Chicago to see his mother who was sick. He remained there three or four days. From there he went to Guthrie to see his father-in-law. He then returned to Louisville. He was in Louisville on the 16th, and according to his own statement, he was then doing nothing. He says that his father-in-law and brother-in-law were to meet him in Paducah on October 21 and arrange for the payment of his debts. This arrangement had been consummated. Even if it had not been it would not have taken long to consummate it. There was nothing to prevent him from returning to Paducah on the 17th. As a matter of fact, he did not return until the 19th, when it was too late to serve him with process. Though we give full effect to his and Mr. Philley's statements in regard to his leaving Paducah for the purpose of getting money to pay his debts, the fact nevertheless remains that he stayed away too long. He gives no good reason why he should not have returned sooner. Here, then, we have a case where a merchant heavily in debt agrees to make a payment to one of his creditors on the 10th day of the month. He leaves on the day before, without advising his creditor's attorney of his intention to leave. Though claiming he was gone for the purpose of borrowing money to pay his debts, he nevertheless remains away after he has arranged to secure the money. Not only so, but he manages to stay away until it is too late to serve him with process for the ensuing term of court. In our opinion, the evidence clearly shows that he was so conceal-

ing himself that summons could not be served upon him. It follows, therefore, that the trial court erred in discharging the attachment.

Judgment reversed and cause remanded for proceedings consistent with this opinion.